IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

RALEIGH DIVISION

FILED

SEP 2 7 2012

JULIE A. RICHARDS, CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

Kevin C. Umphreyville

    Plaintiff

   v.

The United States District Court For the
Western District of Virginia Harrisonburg Division

The U. S. Fourth Circuit Court of Appeals

    Defendants

Case No.: _____

Jury Trial

## Motion For Judgment

NOW COMES the Plaintiff, and moves that this Court enter a judgment in favor of the Plaintiff against the Defendants, and for his motion, states as follows:

### FACTS COMMON TO ALL COUNTS

1. The Plaintiff is a resident of the State of North Carolina residing in the city of Cary.
2. The Defendants are Federal Courts located in the state of Virginia. The United States District Court for the Western Division of Virginia is located in Harrisonburg. The United States Fourth Circuit Court of Appeals is located in Richmond.
3. Constitutional issues and Diversity issues exist in this case, and the constitutional issues presented in the complaint were completely ignored by the Courts.

1

4. Based on the foregoing, jurisdiction and venue are proper in the United States District Court for the Eastern District of North Carolina, Raleigh Division.

5. This lawsuit arises as a result of the improper acts and omissions committed by the Federal District Court in regard to Federal Civil Case #5:07CV00096, and the Fourth Circuit Court of Appeals refusal to provide proper oversight on the process.

6. The District Courts failure to comply with the well established and long standing legal, ethical and procedural standards required in our Federal Court system, culminated with the Courts illegitimate order to grant a motion for summary judgment, in defiance of the evidence.

7. The egregious acts and omissions committed by the Court were not limited to mere misrepresentations and ignorance of the evidence. The Federal District Court is guilty of stating bold-faced lies with regard to the evidence on record in case #5:07CV00096.

8. Case # 5:07CV00096 was a malpractice action filed against a civilian Virginia attorney who makes his living by "representing" clients that serve in our United States Military.

9. The evidence against the Defendant for malpractice was more than overwhelming, it was conclusive. In a 2002 Military Law scandal that defies explanation, but that could perhaps be best described as an obscene abuse of governmental authority and resources, in which the Defendant allowed his client to be denied his Constitutional Rights, most significantly his right to due process, resulting in the scandalous disposition of charges, and a significant loss of liberty for his client.

10. In the 2002 scandal, a Federal Military prosecutor, acting with the full authority and resources of the United States Government, and the protection of the Feres Doctrine, fabricated eleven (11) felony charges, with an aggregate maximum punishment exceeding two (2) life sentences, and then, incredibly, could not produce a single witness to provide any credibility to any of his eleven charges.

11. Even more incredibly, the accused (Plaintiff) was denied any and all requested defense witnesses, and in a "behind closed doors" NJP hearing,

2

(Non Judicial Punishment) and with criminal charges still pending, was told he was guilty of four (4) minor charges.

12. As a result of the Defendants actions, the prosecution was fraudulently allowed to control the process and the disposition of charges, and to falsify the record. This a matter of fact, and the evidence presented in case #5:07CV00096 clearly demonstrates these facts, and the Defendant's guilt.

13. So, just thirteen (13) days prior to the scheduled trial date, and with ten (10) witnesses, from as far away as California, scheduled to testify against the Defendant, the Federal Court followed through with the preconceived and calculated plan to protect the Defendant from the evidence, a jury, and the inevitable outcome of a trial, or a pre-trial settlement.

14. The Federal Courts corruption of the process is very well documented in Exhibit "A" and "B" submitted with this complaint. Exhibit "A" is the transcript of the August 6, 2009 Motions Hearing, and Exhibit "B" is the September 29, 2009 Final Order and Memorandum Opinion of the Court.

15. These two documents provide irrefutable evidence that clearly demonstrate that a United States Federal Court lied about evidence, and completely corrupted a Federal Court case, in order to prevent that case from proceeding to trial, and to protect the Defendant.

16. As in case #5:07CV00096, the evidence against the Federal District Court is conclusive, and the Fourth Circuit Court of Appeals refusal to provide any oversight is telling, and a very sad documentation of what can go wrong in our courts, when there is no legitimate oversight process.

17. One of the cornerstones of our Constitution is the protection of individual rights provided to each of our citizens. Most importantly are the protections from governmental abuses. The acts and omissions committed by the Federal District Court in regard to case #5:07CV00096, are clearly abuses that represent a continuation and cover-up of the governmental abuses against an individual citizen, that began on March 9, 2002.

18. There are simply too many violations of ethical and legal standards committed by this Federal District Court in regard to case # 5:07CV00096 , to allow for a full explanation of each violation in this complaint. Exhibits "A" and "B", when compared to the evidence on record, document the

3

Courts contempt for the evidence and the truth. Therefore, this complaint will provide specific detail on only some of the most egregious acts and omissions committed by the Court. However, it is a fact that the Federal District Court misrepresented, ignored, or lied about virtually every important point of contention between the Plaintiff and the Defendant in case #5:07CV00096.

19. The Court never even addressed the Constitutional basis of the complaint submitted by the Plaintiff. Rather, the Court ignored the evidence documenting the denial of due process, ignored the fact that the government could not produce a single witness to provide any creditability to any of the eleven (11) charges, and ignored the fact that all Defense witnesses were denied, which is a direct violation of the UCMJ.

20. The Court ignored the complaint, pleadings and evidence submitted by the Pro Se Plaintiff, and allowed the attorney Defendant to "craft" a fictional, completely illegitimate version of events, that was in direct conflict with the evidence on record. The Court proceeded to misrepresent, ignore and lie about the evidence in order to grant a Motion of Summary Judgment in favor of the attorney Defendant, and against the Plaintiff.

21. The Court completely ignored the requirement of the "Initial Burden" on the moving party in regard to a Motion for Summary Judgment, which requires that the moving party address each issue and all supporting evidence, presented by the non- moving party. The moving party must present evidence that demonstrates that there are no genuine issues of material fact left for trial.

22. The Defendant did not meet this basic requirement of the "Initial Burden" and the Court never even addressed the requirements. In fact, the Defendant did not produce any evidence that could begin to challenge or refute any of the evidence submitted by the Plaintiff. The Court proceeded to completely corrupt the process, to benefit the attorney Defendant.

23. Even though the Defendant was unable to produce any evidence to legitimize a Motion for Summary Judgment, the Plaintiff prepared affidavits and other evidence specific to the Motion for Summary Judgment in accordance with the FRCP.

4

24. The Plaintiff submitted more than 300 pages of evidence, with his written "Opposition to the Motion for Summary Judgment". This evidence specifically refuted the fictional version of events suggested by the Defendant, and provided irrefutable documentation that; in fact, the Defendant intentionally lied to a United States Federal Court on many issues.

25. Also included with the Plaintiffs "Opposition" were eight (8) affidavits, one of which was a very powerful Expert Opinion from a former Marine Corps Judge. His affidavit clearly stated the Defendants failure to meet the required standard of care, and the basis for his opinions. Additionally the Plaintiff provided affidavits from seven (7) of the ten (10) witnesses scheduled to testify against the Defendant.

26. In contrast the Defendant provided only three (3) affidavits, and two of those were not in evidence as they were dated and submitted after the close of discovery. Also, they were provided by the very two (2) other individuals that were known to be guilty of wrong doing, during the 2002 scandal. They were the Prosecutor, and the assigned Defense Counsel, who worked with the Defendant during the 2002 scandal. The third affidavit was provided by a supposed expert witness, a professor of law and writer, that destroyed his credibility as an expert witness by making false statements in regard to very important evidence. Perhaps his most egregious statements were in regard to his explanation of Exhibits "S" and "T" submitted with the Plaintiffs Opposition to the Motion for Summary Judgment. He attributed written statements that could be considered as an admission of guilt to one of the charges, to the accused (Plaintiff), when in fact they were written by a young clerical worker in the legal department. The document clearly shows the name of the legal department employee who wrote the statement. The Plaintiff did not make these statements, and the document was not signed by the Plaintiff.

27. Exhibit "A" submitted with this complaint, the August 6, 2009 Transcript of the Motion Hearing, provides irrefutable evidence against the District Court. This evidence clearly demonstrates that the Courts acts and

5

omissions went far beyond a bias in favor of the Defendant, but that, in fact, the Court exhibited contempt for the evidence, and the Plaintiff.

28. At no time did the Court require the Defendant to answer even a single question specific to the points of contention between the two parties. These many genuine issues of material fact for trial, were completely ignored, as the Court merely accepted the Defendants fictional version of events, and ignored the evidence on record.

29. At no time did the Court require the Defendant to answer even a single question in regard to the many lies the Defendant "presented" to the Federal Court. Just one example, Exhibit "A" submitted by the Plaintiff with his Opposition, provides irrefutable evidence that the Defendant lied in his Answer to the complaint, when he stated that he never received any payment directly from the Plaintiff, and that it was the Plaintiffs father that hired the Defendant. Exhibit "A" is the bank transfer of the $5000.00 retainer fee from the Plaintiffs bank at Parris Island South Carolina to the Defendants account. This important document corroborates the Plaintiffs version of the establishment of the attorney-client relationship, the agreed upon terms of representation or contract, and the duty owed, explained many times by the Plaintiff.

30. The Court never required the Defendant to answer even one question specific to the evidence against him or the numerous contradictions in his own statements. Rather, the first 17 pages of the transcript (Exhibit A) show that the Court allowed the defense to ramble on, creating a fictional version of events, while completely ignoring the overwhelming evidence against the Defendant.

31. The last 24 pages of the transcript provide irrefutable evidence against the Court, demonstrating how the bias in favor of the attorney Defendant turned into an outright corruption of the process, and an attack on the Plaintiff. The Court challenged the Plaintiff on virtually every point he attempted to make.

32. The transcript, when compared with the evidence, speaks for itself. The Court attempted to intimidate the Plaintiff, and tried to convince him that the evidence on record was insufficient to withstand a Motion for

6

Summary Judgment. However, the evidence far exceeded the requirements to defeat the Motion, and would have resulted in decision in favor of the Plaintiff at trial.

33. The Court told the Plaintiff he was wrong on numerous occasions, while the Plaintiff was attempting to present factual information that was completely supported by the documents in evidence. On page 19, line 12- of the transcript, the Court told the Plaintiff he was wrong in regard to the agreed upon terms of representation, and used the false premises stated in line 12 through 23 on that page, as a key misrepresentation in an attempt to provide an "out" for the Defendant.

34. The transcript also provides irrefutable evidence that the Court violated ethical and legal standards by attempting to discredit and undermine the affidavits submitted by the Plaintiff. Not only did the Court misrepresent the content of the affidavits, but also attempted to convince the Plaintiff that his affidavits and evidence were insufficient to withstand the Motion.

35. The Court used its position of authority to present countless false statements as factual, in an attempt to overwhelm and intimidate the Plaintiff.

36. The Plaintiff continued to present factual statements only to be attacked by false statements from the Court. On page 35 of the transcript the Plaintiff again attempted to present the opinion of one of his expert witnesses, a retired Marine Corps Judge, who clearly stated his opinion that the Defendant did not meet the required standard of care, and also stated his reasons for his opinion. On line 20-24 of page 35 the Court again attempted to intimidate the Plaintiff by stating "It's incomprehensible that you expect the Court to consider that sort of evidence that you didn't offer by way of affidavit or have Mr. Nunley offer or take a supplemental deposition and have him offer that opinion". Mr. Nunleys affidavit clearly presented the absence of meaningful legal representation while all criminal charges were still pending after the Article 32 Hearing. His affidavit also clearly stated the continuing obligation of the Defendant to the Plaintiff.

37. When the non-moving party submits affidavits and other relevant evidence in response to a Motion for Summary Judgment, it is the jury that should decide the genuine issues of material fact, and weigh the value of the evidence.

38. Perhaps the best single illustration of the level of corruption and lack of integrity demonstrated by the Courts actions are revealed at another point in the hearing. The Plaintiff was again attempting to explain the agreed upon terms of representation, and duty owed. In yet another "attempt to intimidate the Plaintiff, the Court begins to chastise the Plaintiff, and on page 26-line 1 states "we're talking about what's a matter of record now, Mr. Umphreyville, what's a part of the record". The Court continued to berate the Plaintiff asking why he had not asked the Defendant about the duty owed, and suggested that the Plaintiff had not developed a sufficient record to permit the Court to make an informed decision on summary judgment as to the position of the parties. (Page 26- line 7-11) AND THEN, INCREDABLY (Page 26-line 12) THE COURT ADMITTED NOT KNOWING THAT THE PLAINTIFF HAD DEPOSED THE DEFENDANT.

39. The Plaintiff had submitted the entire 228 page deposition of the Defendant with his "Opposition", and referred to that deposition many times in the written Opposition. The Plaintiff asked that the Court read the entire Deposition because it was 228 pages of contradictions and misrepresentations that were completely exposed by the evidence on record.

40. In direct parallel to the 2002 scandal, the transcript demonstrates that at least to that point in the process, the Federal District Court had not conducted a proper hearing, and it was incumbent on the Court to do the right thing. If the Court had gone back, and properly evaluated all the evidence and denied the Motion, the improper acts and omissions committed during the hearing would have become a mute point. However, just as in the 2002 scandal, the acts and omissions committed by the Defendant prior to the disposition of charges, and the acts and omissions committed by the District Court prior to the Final Order, became acts and omissions of corruption with the Final Order and the failure to

8

follow through, with a proper and complete process, by adhering to the required standards.

41. Unfortunately, both the Defendant and the Federal District Court failed to take the opportunity for redemption, and the Court Final Order provides irrefutable evidence that demonstrates that the Federal District Court decided to follow through with its calculated plan for the corruption of case #5:07CV00096.

42. The Final Order and Written Memorandum Opinion, dated September 29, 2009, when compared with the evidence, reveals a clear effort to misrepresent or ignore the issues, evidence and facts presented in the record of case # 5:07CV00096.

43. The fact that the Federal Court went even further, and incorporated bold-faced lies into its written Memorandum Opinion, requires that the Federal Government take action to address the corruption, and rectify the injustice.

44. The Fourth Circuit Court of Appeals failure to address the documented corruption of case #5:07CV00096 requires an investigation into the oversight process in this case.

45. The entire Federal process in case #5:07CV00096 represents a clear denial of due process and denial of equal protection under the law. The Federal Courts actions could perhaps be best described as a continuation and cover up, of the scandal that began in 2002.

46. The Courts Final Order and Memorandum Opinion demonstrate that the Court took no action to correct its acts and omissions committed against the Plaintiff at the August 6, 2009 Motion Hearing. Rather, the Court demonstrated its contempt for the evidence, and due process in this case.

47. Virtually every issue presented in the Courts Opinion is an attempt to mislead, misrepresent, or distract from the complaint, pleadings, and evidence submitted by the Plaintiff. Additionally the Court ignored the underlying and undisputed facts of the case, and presents its Written Opinion based on the false premises created by the Defendant.

9

48. The Courts acceptance of the false premises created by the Defendant, which are not supported by the evidence, are a clear violation of ethical, legal, and procedural standards and requirements.

49. The Courts Written Opinion intentionally and completely ignored the underlying and undisputed fact that the Prosecutor (Government) could never produce, even a single witness to add any credibility to even one of its eleven scandalous charges.

50. Also, the Court intentionally ignored the underlying and undisputed fact that the Government and the Defendant denied all requested Defense witnesses in the 2002 scandal. This is a direct violation of the UCMJ section V, and represents the denial of due process, and defines the corruption of the 2002 scandal.

51. These two undisputed facts, (presented in 49, 50 above) along with the Defendants attempts to legitimize the 2002 charges and prosecution against the Plaintiff, and the District Courts acceptance of these false premises, reveals the Courts contempt for the evidence on record. This documented bias in favor of the Defendant provides the foundation on which the Court built its misleading, deceitful, and corrupted version of events presented in its Written Opinion.

52. The entire document, Final Order and Memorandum Opinion, prepared by the Federal District Court is a fraudulent and corrupted attempt to present a seemingly well reasoned and thorough examination of the evidence; however any review of the evidence submitted by the Plaintiff refutes the Courts written Opinion, and reveals the intentional corruption of case #5:07CV00096.

53. The Court intentionally misrepresented the establishment of the attorney-client relationship, the agreed upon terms of representation, and the duty owed.

54. The Court intentionally misrepresented and ignored the evidence that documented the establishment of the attorney-client relationship which took place on May 7, 2002, between the Defendant and the Plaintiff.

55. The Court intentionally misrepresented and ignored the evidence supporting the breach of the duty committed by the Defendant.

56. The Court intentionally misrepresented and ignored the evidence supporting the damages suffered by the Plaintiff as the result of the acts and omissions committed by the Defendant.

57. The Court intentionally misrepresented and ignored the evidence supporting the fact that the Defendants acts and omissions were the proximate cause of the damages suffered by the Plaintiff, as a result of the Defendants breach of the duty owed.

58. There are well over one thousand (1000) pages of evidence on record in case #5:07CV00096. The Plaintiff submitted more than three hundred (300) pages of evidence with his Opposition to the Motion. These 300 pages of evidence specifically refuted the false claims presented in the Motion for Summary Judgment, and also corroborated the Plaintiffs complaint and pleadings.

59. Included with the evidence submitted to specifically address the false claims presented by the Defendant, the Plaintiff provided a listing of each Exhibit A-Z, and a "Quick Reference" guide. The reference guide indicated which Exhibits provided evidence to substantiate each of the requirements, duty owed, breach of that duty, damages, and proximate causation.

60. The Court not only ignored or misrepresented this evidence, but the Court went so far as to present bold-faced lies in regard to the evidence in its Memorandum Opinion.

61. The Court lied when it wrote –it is undisputed that the attorney-client relationship was established in May of 2002, when Umphreyvilles father retained Gittins to represent Umphreyville- (page 14).

62. The Court lied when it wrote- Gittins was subsequently paid $5000.00 to represent Umphreyville during the course of the Article 32 proceedings. (Page 3)

63. The Court lied when it wrote- Instead, the most serious charges were dismissed following the Article 32 Hearing, at which Umphreyville was represented by Gittins- (Page 15).

64. The Court lied when it wrote- Given the absence of any factual basis of Nunley's statement, the Court is convinced that Nunley's affidavit fails to create a genuine issue of material fact on this issue. (Page 16)

65. The Court lied when it wrote- Having reviewed the record, the Court concludes that the claims asserted in counts II, III and IV do not involve the type of rare circumstance in which expert testimony on the standard of care is not required, and the expert testimony proffered by Umphreyville is insufficient to withstand Summary Judgment. (Page 12)

66. The Court lied when it wrote- Umphreyville has failed to offer any competent evidence from which a reasonable jury could find that the breach was the proximate cause of his claimed damages.-(Page 14)

67. The Court lied when it wrote- Umphreyvilles only other evidence in this regard is an affidavit from Richard Van Bortel, a retired Marine First Sergeant who was present when Umphreyville appeared before the Commanding Officer for the NJP Hearing. -(Page 19)

68. The Court lied when it wrote- However, Van Bortel did not set forth any factual basis or reasoning for his lay opinion, and the affidavit provides no indication that Van Bortel is competent to testify on the matter stated.-(Page 19)

69. The Court lied when it wrote -However, Umphreyville has not proferred any evidence from which a reasonable jury could find that his charges would have been dismissed at the NJP Hearing, or that he would have otherwise obtained a more favorable outcome, but for the Gittins alleged negligence or breach of contract. (Page 18)

70. The Court lied when it wrote – At the time of his voluntary release from active duty, Umphreyville had regained his occupational specialty of Military Policeman. –(Page 8)

71. These Ten (10) outright lies only scratch the surface as to the level of deception, arrogance, lawlessness, and corruption committed in order to protect an attorney Defendant from the evidence against him.

72. Those lies and all the additional lies and misrepresentations presented in the Courts Memorandum Opinion provided the basis for the fraudulent conclusions described in the document.

73. The evidence against the Defendant in case #5:07CV00096 was more than overwhelming, it was conclusive. The Plaintiffs Complaint, Pleadings, affidavits and evidentiary documents are clear, concise, and complete.

74. The Plaintiff hired the Defendant prior to any charges being filed. He hired the Defendant only after he became very concerned with the legitimacy of the Governments two month investigation, and inappropriate comments made by the prosecution. The Defendant was hired to prevent the prosecutor from filing unfounded charges, and to defend his client against any and all charges, should the government attempt to peruse any charges.

75. The attorney-client relationship was established on May 7, 2002 during a telephone conversation between the Defendant and the Plaintiff, in which the Plaintiff agreed to send the Defendant a $5000.00 retainer. The terms of representation were discussed during that conversation, and there was no confusion as to the agreed upon terms.

76. The Defendant made no effort to prevent the Prosecutor from filing charges against his client, and on May 10, 2002 the government filed eleven (11) felony charges, that were in direct conflict with the evidence in the Prosecutors possession. There was no evidence submitted to indicate that the Defendant made any effort to prevent the prosecutor from filing the eleven scandalous charges.

77. The $5000.00 retainer provided the client with continuing representation that would attempt to prevent the Prosecutor from filing any charges, and address any and all charges, should the Prosecution decide to attempt to pursue charges. The client (Plaintiff) assured the Defendant that he was completely innocent of the allegations, and that he had not violated any laws. Additional expenses, for travel and other costs would be billed monthly. It was clearly understood that only if the Government could produce any evidence and witness testimony to require a Court Martial for the disposition of any charges that may develop, would the agreed upon additional fee of $9000.00 be required. This fee would not be due until 2 weeks after any potential charges were referred to trial.

13

78. "Exhibits A and B" submitted with this complaint document the Federal District Courts violation of ethical, legal, and procedural standards, and requires that corrective and punitive actions be taken against the Court. It also requires that the corrupted process and Final Order be overturned, and that the illegitimate decision in case #5:07CV00096 be reversed, and that the requested relief be granted to the Plaintiff.

79. The Fourth Circuit Courts failure to provide proper oversight requires that corrective and punitive actions be taken against the Fourth Circuit Court of Appeals.

80. The Plaintiff has been injured as a direct and proximate result of the Federal District Courts improper acts and omissions. The Plaintiff was improperly denied the opportunity to call witnesses and present the overwhelming evidence against the Defendant. The Plaintiff was improperly denied the opportunity to address the scandalous process that occurred in 2002, and the Defendants prominent role in that scandal. The Plaintiff was improperly denied the opportunity to present evidence and call Expert and fact Witnesses that could testify as to the scandalous disposition of charges, and the denial of due process. The Plaintiff was denied the opportunity to call witnesses and present the evidence that would have completely exonerated him of all charges, and provided a legal decision, based on fact, that is the Military's required first step in correcting the record.


**Count I- Negligence – In favor of the Defendant, and against the Plaintiff**

81. The allegations set forth in Paragraph 1 through 80 above are incorporated herein as if each were set forth in its entirety.

82. The Federal District Court, and the Fourth Circuit Court of Appeals failed to fairly and impartially evaluate the issues and evidence submitted in case #5:07CV00096.

83. The Court failed to require the Defendant, as the moving party in a Motion for Summary Judgment, to meet the initial burden.

14

84. The Court completely ignored the fact that the Defendant did not meet the requirements of the initial burden, and that the Defendant was unable to produce any evidence that could refute any of the allegations set forth by the Plaintiff.

85. As referenced in this complaint, the Court ignored or misrepresented every critical issue presented in the complaint, pleadings and evidence.

86. The Court simply accepted the fictional version of events presented by the attorney Defendant, even though the Defendants version was not supported by the facts and evidence on record in the case.

87. As referenced in this complaint, the Court failed to properly prepare for the Motions Hearing that took place on August 6, 2009, and was not familiar with much of the evidence submitted by the Plaintiff in his Opposition to the Motion.

88. After the motions hearing, the Court failed to go back and properly evaluate the evidence, as demonstrated by the misrepresentations and improper conclusions contained in the Final Order and Memorandum Opinion.

89. As a direct and proximate result of the Federal District Courts negligence demonstrated in favor of the attorney Defendant, and against the Pro Se Plaintiff, the Plaintiff was denied due process, and injured in the amount of $1,620,000.00, including: loss of opportunity to have his Military record corrected, loss of Liberty continuing as a result of the 2002 scandal, loss of time and monies spent in perusing the correction of an obvious injustice, and loss of the judgment and any further and additional relief that would have been awarded in case #5:07CV00096.

WHEREFORE, the Plaintiff prays that this Court award him judgment in the amount of $1,620,000.00, together with any further and additional relief as the Court may deem appropriate based upon evidence presented at trial.

## COUNT II: BIAS

90. The allegations set forth in Paragraph 1 through 80 above are incorporated herein as if each were set forth in its entirety.

91. The Federal District Court demonstrated a clear and improper bias against the Pro Se Plaintiff, as demonstrated in the transcript of the August 6, 2009 Motions Hearing and the Courts Final Order and Memorandum Opinion, Exhibits "A" and "B" submitted with this complaint.

92. The Court failed to fulfill its ethical and legal obligation to fairly and impartially evaluate all of the issues and evidence presented in the Plaintiffs complaint, pleadings, affidavits and additional documents.

93. The Court admitted during the August 6, 2009 Motions Hearing that the Court did not know that the Plaintiff had taken the Defendants deposition, and submitted the entire 228 page document with his Opposition to the Motion for Summary Judgment, and asked the Court to read the entire Deposition as it was an incredible record of contradictions and misrepresentations that were completely exposed by the evidence on record. (See exhibit A-page 26 line 12).

94. The Federal District Court simply accepted the attorney Defendants fictional version of events, and never even asked the Defense a single question in regard to the many contradictions and misrepresentations presented in the Defendants submissions to the Court.

95. The Court verbally attacked the Plaintiff as he attempted to present factual information during the hearing, and attempted to intimidate him by telling him he was wrong and insisting that the Defendants version of events was correct.

96. The Federal District Courts Final Order and Memorandum Opinion provide irrefutable evidence that the Court acted on its bias against the Plaintiff, and in favor of the Defendant. The Courts failure to go back and fairly evaluate the evidence after the flawed Motions Hearing is exposed by the same misrepresentations and invalid conclusions presented in the Opinion, as were expressed by the Court during the hearing.

97. As a direct and proximate result of the District Courts bias against the Plaintiff, and in favor of the Defendant, the Plaintiff was denied due process, and injured in the amount of $1,620,000.00, including: loss of the opportunity to have his Military record corrected, loss of Liberty continuing as a result of the 2002 scandal, loss of time and monies spent in perusing

16

the correction of an obvious injustice, and loss of the judgment and any further and additional relief that would have been awarded in case #5:07CV00096.

WHEREFORE, the Plaintiff prays that this Court award him judgment in the amount of $1,620,000.00, together with any further and additional relief as the Court may deem appropriate based upon evidence presented at trial.

### COUNT III: CORRUPTION

98. The allegations set forth in Paragraph 1 through 80 above are incorporated herein as if each were set forth in its entirety.

99. The Federal District Court and the Fourth Circuit Court had a legal obligation to make every effort to ensure that both parties in case 5:07CV00096 provided honest, truthful information to the Courts. However, both Courts failed to fulfill this most basic requirement, as the Defendant intentionally provided false information or ignored virtually every critical issue presented in the Plaintiffs complaint.

100. The evidence on record in case # 5:07CV00096 clearly shows that the Defendant lied repeatedly in his submissions to a Federal Court in a cover up his involvement in the corruption described in the above referenced case, and that the Court ignored his lies.

101. The Court made no effort to question the Defendant on the many false statements he provided even though the Plaintiff had submitted evidence that directly refuted these false statements.

102. The defendant lied in regard to the establishment of the attorney-client relationship, the terms of representation, the representation provided, the evidence that exonerated the Plaintiff, the disposition of charges, and much more. However, the Courts failed to take any action against the Defendant for his documented lies.

103. The Courts failed to reconcile, or to even attempt to reconcile the discrepancies presented between the Defendants version of events and the genuine issues of material fact provided by the Plaintiff. Rather the Court provided immunity for the Defendants many lies, and accepted his fraudulent version of events.

104.    The District Courts Final Order and Memorandum Opinion complete
        and document the corruption involved in the Courts failure to hold the
        Defendant accountable for his many lies, that should have resulted in a
        judgment in favor of the Plaintiff.

105.    As a direct and proximate result of the corruption involved in the
        Courts failure to take action against the Defendant for the many
        intentional lies he submitted to the Federal Court, the Plaintiff was denied
        due process, and injured in the amount of $1,620,000.00, including: loss of
        the opportunity to have his Military record corrected, loss of Liberty
        continuing as a result of the 2002 scandal, loss of time and monies spent
        perusing the correction of an obvious injustice, and loss of the judgment
        and any further and additional relief that would have been awarded in case
        # 5:07CV00096.

        WHEREFORE, the Plaintiff prays that this Court award him judgment in the
        amount of $1,620,000.00, together with any further and additional relief as
        the Court may deem appropriate based upon evidence presented at trial.

### COUNT IV: CORRUPTION

106.    The allegations set forth in Paragraph 1 through 80 above are
        incorporated herein as if each were set forth in its entirety.

107.    The Federal District Court failure to adhere to the required ethical,
        procedural, and legal standards was taken even further by the Courts
        inappropriate handling of the witness affidavits submitted by the Plaintiff.

108.    The Court demonstrated contempt for the evidence presented by the
        Plaintiff. A United States Federal Judge presented bold-faced lies in regard
        to the evidence submitted in a Federal District Court case, in an attempt to
        discount or eliminate the Plaintiffs witnesses.

109.    The lies are documented in the Courts own Transcript and
        Memorandum Opinion. This is a statement of fact, and there are no
        complicated legal issues involved. The Courts actions represent a clear and
        irrefutable case of corruption.

110.    As referenced in this complaint the Judge lied about many important
        issues, and his attempts to ignore and misrepresent: Witness Affidavits, the

establishment of the attorney-client relationship, the duty owed, the breech of representation, the disposition of charges, proximate causation, damages suffered by the Plaintiff, and much more, are violations of the required standard.

111.    The Transcript and Memorandum Opinion provide direct evidence that the Court used these lies as a illegitimate basis to "craft" fraudulent conclusions in an attempt to justify granting the Motion for Summary Judgment.

112.    As a direct and proximate result of  the Federal District Court lies and illegitimate conclusions, the Plaintiff was denied due process, and injured in the amount of $1,620,000.00, including: loss of the opportunity to have his Military record corrected, loss of Liberty continuing as a result of the 2002 scandal, loss of time and monies spent perusing the correction of an obvious injustice, and loss of the judgment and any further or additional relief that would have been awarded in case # 5:07CV00096.
WHEREFORE, the Plaintiff prays that this Court award him judgment in the amount of $1,620,000.00, together with any further and additional relief as the Court may deem appropriate based upon evidence presented at trial.

## COUNT V: CORRUPTION

113.    The allegations set forth in Paragraph 1 through 80 above are incorporated herein as if each were set forth in its entirety.

114.    The Federal District Court also intentionally ignored many of the critical undisputed facts of the case, in an attempt to protect the Defendant from the overwhelming evidence against him.

115.    The Court failed to consider that the Government, in three (3) separate hearings in the 2002 prosecution against the Plaintiff, could not produce a single witness to add any credibility to any of the eleven (11) charges.  This is a fact that was corroborated by Exhibits "E","H", and "T" submitted by the Plaintiff with his Opposition.

116.    The Court also failed to consider that the Plaintiff was denied any and all requested Defense witnesses during those three (3) hearings while

felony criminal charges were pending. This is not only a direct violation of the UCMJ; it is a violation of the United States Constitution. This fact is corroborated by Exhibits "E", "H", "S" and "T" submitted by the Plaintiff with his Opposition.

117.    The Court also failed to consider the facts established in Exhibit "O" submitted with the Plaintiffs Opposition. Exhibit "O" is a response letter from the Department of the Navy to United States Senator Richard Burr, dated June 10, 2009. This letter confirms that the disposition of charges was illegitimate and the Plaintiffs Military record was falsified.

118.    The Courts failure to consider these violations of the Plaintiffs Constitutional Rights in the 2002 prosecution against him, and the Defendants role in allowing that to happen are beyond contempt.

119.    The Courts failure to consider the evidence that demonstrated that the Defendant attempted to cover up the errors and corruption committed by the Prosecutor in 2002 defines the corruption in case 5:07CV00096. Exhibit "G", the disposition of the Defendant, submitted by the Plaintiff, provides irrefutable evidence that the Defendant attempted to cover up the wrong doing of the Prosecutor in the 2002 scandal.

120.    The District Courts admission that the Court was not aware of Exhibit "G", the Defendants Deposition, is evidence that positively confirms the level of the Courts Corruption of case 5:07CV00096.

121.    The improper Acts and Omissions committed by the Federal District Court, and documented in both Exhibit "A", the Courts Transcript of the August 6, 2009 Motions Hearing, and Exhibit "B" the Courts Final Order and Memorandum Opinion, required that the Fourth Circuit Court of Appeals provide oversight, and take action to correct the corrupted process.

122.    The Fourth Circuit Court of Appeals failed in its legal responsibilities to provide oversight on the corrupted process, ignoring the evidence presented in the Plaintiffs appeals.

123.    As a direct and proximate result of the Federal District Court failure to consider undisputed facts and other evidence that demonstrated the Defendants wrongdoing, the Plaintiff was denied due process, and injured

in the amount of $1,620,000.00, including: loss of the opportunity to have his Military record corrected, loss of Liberty continuing as a result of the 2002 scandal, loss of time and monies spent perusing the correction of an obvious injustice, and loss of the judgment and any further or additional relief that would have been awarded in case # 5:07CV00096.

WHEREFORE, the Plaintiff prays that this Court award him judgment in the amount of $1,620,000.00, together with any further and additional relief as the Court may deem appropriate based upon evidence presented at trial.

### COUNT VI: CORRUPTION

124.    The allegations set forth in Paragraph 1 through 80 above are incorporated herein as if each were set forth in its entirety.

125.    The Federal District Court and The Fourth Circuit Court of Appeals violated the ethical, procedural, and legal obligations required in the United States Federal Court System.

126.    The District Court violated the Constitutional Rights of the Pro Se Plaintiff by denying him due process and equal protection under the law, by granting a Motion for Summary Judgment that was deficient in every respect.

127.    When the Plaintiff referred to all of the evidence and witness affidavits that refuted the Defendants fictional version of events during the Motions Hearing, the Judge suggested that the Plaintiff had gathered a great deal of "information". The Court attempted to intimidate the Plaintiff and to convince him that all the "information" he had submitted was not evidence, and that he had not provided sufficient evidence to withstand the Motion for Summary Judgment. This is not a accurate assessment of the evidence.

128.    The Courts failure to allow a jury to evaluate the genuine issues of material fact that existed in case 5:07CV00096 is a violation of ethical, procedural, and legal standards required in our Federal Court system.

129.    The Federal Judge acted in an irresponsible and illegal manner that demonstrated that he believed that he was above the law, and that he would make the decision to control the "facts" and protect the attorney Defendant from a jury, and the overwhelming evidence against him.

130.    The level of arrogance and condescension, and the lack of concern for the oversight process demonstrated by the Federal Judge, reveals some very troubling problems with the respect to justice for Pro Se litigants.

131.    A United States Federal Judge intentionally misrepresented and lied about the evidence, not only to protect the Attorney Defendant from a jury, but to also protect that attorney from the inevitable outcome, a pre-trial settlement. By ignoring the numerous lies submitted by the Defendant and documented in the evidence, the Court improperly protected the Defendant from having to make a decision between a pre-trial settlement, or risk the inevitable outcome of intentionally committing perjury in a Federal Court case. Based on the evidence submitted by the Plaintiff in case #5:07CV00096 the Defendant could not reasonably make the decision to proceed to trial.

132.    The full scope of possible incentives considered by the Federal Judge to prompt his illegal corruption of the process is not known, however the evidence clearly shows that the illegal corruption occurred, and that the Judge demonstrated his contempt for the evidence, and for the Pro Se Plaintiff who had more than fulfilled all of the procedural and legal requirements to proceed to trial.

133.    The failure of the Fourth Circuit Court of Appeals to fulfill its obligation to provide a legitimate oversight process, and its failure to address the meritorious facts and allegations presented in the Plaintiffs appeals, represents a intentional injustice, and requires that action be taken to correct that injustice.

134.    As a direct and proximate result of the Federal District Courts failure to provide a fair and impartial process for the Plaintiff, and the Judges corruption of that process in favor of the attorney Defendant and against the Pro Se Plaintiff, the Plaintiff was denied due process, and injured in the amount of $1,620,000.00, including: loss of the opportunity to have his

22

Military record corrected, loss of Liberty continuing as a result of the 2002 scandal, loss of time and monies spent perusing the correction of an obvious injustice, and loss of the judgment and any further or additional relief that would have been awarded in case # 5:07CV00096.

WHEREFORE, the Plaintiff prays that this Court award him judgment in the amount of $1,620,000.00, together with any further and additional relief as the Court may deem appropriate based upon evidence presented at trial.

Respectfully Submitted

Date 27 September 2012

Kevin C. Umphreyville
Plaintiff Pro Se
103 Chalmette Court
Cary, North Carolina
919.606.3997